Esso Standard Oil Company, Appellant

*v.*

John B. Cobb, County Court Clerk, Appellee

(*Nashville,* December Term, 1956)

Opinion filed March 8, 1957.

Waller, Davis & Lansden, Nashville, for complainant.

Elmer D. Davies, Jr., County Attorney, Nashville, George F. McCanless, Attorney General, Allison B. Humphreys, Solicitor General, Milton P. Rice, Assistant Attorney General, for defendant.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

The question for solution in this case is whether an operator of an oil depot who pays a privilege tax under Item 71 of T.C.A. sec. 67-4203 must pay also the retail service station privilege tax under Item 8(b) of said section, by reason of the fact that sales of motor fuel and lubricants are made to farmers, contractors and truck-ers, who are the consumers of said products.

The appellant under protest paid the tax under Item 8(b) of said section in the amount of $25 State tax, $25 county tax, and $1.00 clerk's fee, totaling $51, and filed this bill to recover same. The cause was heard on the stipulation of facts and the Chancellor held that appel-

lant was not entitled to recover for the reason that it was liable for both the retail service station tax and the oil depot tax.

According to the stipulation, the sales by appellant from its oil depot in the Nashville District to large consumers has ranged from approximately 17% to approximately 9% of its total sales of motor fuels and from 38% to 29% of its total sales of motor oils. It does not appear from said stipulation that any retail sales, that is, sales to consumers, have been made in quantities of 31 gallons or less.

Said Items 71(a) provides as follows:

"(a) Oil Depots. The term 'oil depots' as used herein shall be understood to mean a place within this state where petroleum products or substitutes therefor, come to rest within this state after movement in interstate commerce or where such products are kept for sale after manufacture or processing in this state, in quantities greater than thirty-one (31) gallons liquid measure. The transfer of such products from a 'licensed oil depot' to another location from which wholesale sales are made shall make such location a separate and distinct oil depot."

Then follows a schedule of the amount of tax due based upon the number of gallons of petroleum products sold, used or otherwise distributed or stored annually commencing with the 31 gallon figure.

Item 8(b) of said section provides as follows:

"Sellers At Retail Of Motor Fuel, Oil, Gasoline, Tires, Etc.; Repair Shops.—Persons selling at retail motor fuel, lubricants, new, used, or rebuilt automo-

bile or truck tires, repairing or rebuilding automobile or truck tires, or tubes, or engaged in the business of selling or servicing motor driven vehicles with respect to tires, batteries, parts or accessories, or in washing, polishing, repairing or lubricating motor vehicles, shall pay the following privilege tax per annum for each such shop or station:''.

Then follows a list of the amount of tax due depending upon the number of persons working at each shop or station.

It is necessary to keep in mind also the following provisions: T.C.A. sec. 67-4007 provides that any person doing an act declared to be a privilege by Chapters 40 to 43 inclusive shall be deemed to be doing business within the meaning hereof: T.C.A. sec. 67-4004 provides as follows:

"Avoidance Of Double Tax.—Each person engaged in a single business, which business might fall under two (2) or more Items of 67-4203 shall pay the highest tax imposed by such Items, but only one (1) tax. This section shall not be construed to permit any person to exercise two (2) or more taxable privileges by the payment of ony one (1) tax.''

It clearly appears to us from an examination of Item 8, supra, that the same is intended to apply to automobile filling stations as the term is commonly understood, and to repair shops; the Item 8 is headed, "Automobiles," and the express language of the paragraph (b) is that it relates to a shop or a station; also the amount of the tax begins with $15 for two persons or less and

runs to a maximum of $60 per year for 19 or more persons per year; and only retail sales characteristic of the usual filling station are contemplated.

On the other hand, Item 71 relates to the storing or keeping for sale or use or distribution petroleum products and the minimum quantity to be so stored or kept is fixed at any amount greater than 31 gallons; then the amount of privilege tax payable is $50 for anything between the minimum and 100,000 gallons, and may amount to a maximum figure of $700 per year for handling 6,-000,000 or more gallons.

In *Spur Distributing Co. v. Lindsey,* 166 Tenn. 424, 62 S.W.2d 53, involving the 1931 Act as the same now substantially appears in the Code as Item 71, the Court construed the first sentence of said Item 71 to include retail sales as well as wholesale sales, although the second sentence referred to wholesale sales only. The rule is rather well settled in Tennessee that the distinction between a retail and a wholesale dealer does not depend on the quantity sold but sales to customers for the purpose of consumption are retail sales and those to dealers for the purpose of trade or resale are wholesale, unless, of course, a statute expressly provides otherwise, in which 32 L.R.A.,N.S., 627, there is an annotation referring to *State v. Lowenhaught,* 79 Tenn. 13; *State v. Tarver,* 79 Tenn. 658; *Harrison v. State,* 96 Tenn. 548, 550, 35 S.W. 559, in which cases the subject of sale was liquor instead of petroleum products.

Two deductions would seem to follow from what is said above. First, since the first sentence of Item 71(a) has already been construed by this Court to include both retail and wholesale sales or other distribution, it would

seem that the Act itself recognizes retail sales or distribution as being an integral part of the business of maintaining an oil depot. Second, the maintenance or operation of an oil depot is not within the purview of said Item 8(b) relating to what are commonly known as service stations and repair shops.

Therefore, it cannot fairly be said that the appellant was exercising two taxable privileges. This distinguishes the instant case from the case of *Sims v. Carter,* 173 Tenn. 263, 116 S.W.2d 1031, and *Securities Investment Co. v. Cobb,* 172 Tenn. 418, 113 S.W.2d 61, relied upon by appellees.

Finally any suggestion that our interpretation gives oil depots an advantage over the retail filling stations is hardly tenable when it is observed that the minimum tax for an oil depot is almost the same as the maximum for a filling station, with a substantially mounting schedule above the minimum for depots.

The appellant was, therefore, improperly held liable for the privilege tax provided for said Item 8(b).

Reverse the decree below and enter judgment here accordingly.